**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**LARRY WHEELER, et al., Individually and
on behalf of all those similarly situated,**

    **Plaintiffs,**

**v.**

**PENSION VALUE PLAN FOR EMPLOYEES OF THE
BOEING COMPANY, et al.,**

    **Defendants.**       **Case No. 06-cv-500-DRH**

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for a lift of stay (Doc. 30) and the motion to dismiss (Doc. 11) brought by Defendant Boeing Company ("Boeing"). For the following reasons, Boeing's motions are **GRANTED** and this action is **DISMISSED with prejudice**. The motion for class certification brought by Plaintiffs Larry Wheeler, David Keeton, Maral Keeton, and Vincent Parisi (Doc. 38) is **DENIED as moot**.

## Introduction

This case is a putative class action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, on behalf of a proposed class of participants in Defendant Pension Value Plan for Employees of the Boeing Company ("the Plan"). Plaintiffs are onetime employees of Defendant McDonnell Douglas Corporation ("McDonnell Douglas") who became, as a result of a merger between Boeing and McDonnell Douglas in 1997, employees of Boeing. In 1999 Plaintiffs became participants in the Plan.

The Plan employs a so-called "cash balance" design. Specifically, under the Plan's

terms, each Plan participant has a "Credit Based Account" ("CBA"). *See* Doc. 12, Ex. A § 4.2(a)(1).[1] "Benefit Credits" are allocated to each Plan participant's CBA as of the last day of each Plan year as a percentage of the participant's salary based on the participant's age. *See id*. § 4.2(b). Thus, Plan participants younger than 30 receive annual credits of 3% of their salary, participants aged 30 to 34 receive credits of 4% of their salary, participants aged 35 to 39 receive credits of 5% of their salary, participants aged 40 to 44 receive credits of 7% of their salary, participants aged 45 to 49 receive credits of 9% of their salary, and participants aged 50 or over receive credits of 11% of their salary. *See id*. "Interest Credits" are allocated to Plan participants' CBAs at the end of each Plan year at a rate equal to the annual rate on 30-year Treasury securities for the November of the prior Plan year. *See id*. § 4.2(c)(1). The Plan cabins the applicable interest rate between 5.25% and 10%. *See id*. The credits are, of course, an accounting fiction, as the CBAs are entirely hypothetical; in a cash balance plan, "the employee has no actual account, the employer makes no contributions to an employee account, and so there is no account balance to which interest might be added." *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 758 (7th Cir. 2003).

Plaintiffs properly allege that they are participants in the Plan, that the Plan is an employee benefit plan, and that Boeing and McDonnell Douglas are sponsors of the Plan and/or predecessor plans within the meaning of ERISA. *See* 29 U.S.C. § 1002(7), (2)(A), (3), (16)(B). Plaintiffs' complaint contains two counts. Count I alleges that the Plan violates ERISA

---

1. The Court is permitted to review the substantive terms of the Plan document, which was submitted by Boeing as an exhibit to its motion to dismiss, because the document is referenced numerous times in Plaintiffs' complaint and is central to the claims asserted therein. *See LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

§ 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), prohibiting so-called "backloading" of ERISA plan benefits. Count II alleges that the Plan violates ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), prohibiting age discrimination with respect to ERISA plan benefits. Plaintiffs seek relief as to both counts of the complaint under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). On August 30, 2006, Boeing moved for dismissal of Plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing, inter alia, that the decision of the United States Court of Appeals for the Seventh Circuit in *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir. 2006), requires dismissal of Count II of the complaint. On November 2, 2006, the Court stayed proceedings as to Count II pending disposition of a petition for a writ of certiorari in the *Cooper* case by the Supreme Court of the United States. The petition having been denied on January 16, 2007, *see Cooper v. IBM Personal Pension Plan*, 127 S. Ct. 1143 (2007), Boeing has requested that the Court lift the stay. The Court grants that request and now proceeds to rule on Boeing's Rule 12(b)(6) motion.

## Discussion

### A. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of a complaint, not to resolve a case on its merits. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000); *Carr v. Whittenburg*, No. 3:01-cv-625-DGW, 2006 WL 1207286, at *2 (S.D. Ill. Apr. 28, 2006). When evaluating a Rule 12(b)(6) motion, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999); *Maxwell v. Village of*

*Sauget, Ill.*, No. 06-451-GPM, 2007 WL 420195, at *1 (S.D. Ill. Feb. 5, 2007). Because the Federal Rules of Civil Procedure establish a liberal pleading system that requires only notice pleading, "[a] complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal." *National Serv. Ass'n, Inc. v. Capitol Bankers Life Ins. Co.*, 832 F. Supp. 227, 230 (N.D. Ill. 1993). *See also Bommersbach v. Ruiz*, 461 F. Supp. 2d 743, 751 (S.D. Ill. 2006) ("A Plaintiff need not set out all relevant facts or recite the law in his or her complaint[.]"). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**B.     Count I (Backloading)**

As discussed, Count I of Plaintiffs' complaint alleges violations of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), by the Plan. The Plan, as discussed, is a cash balance plan and thus is a "defined benefit plan" for ERISA purposes. 29 U.S.C. § 1002(35). *See also Esden v. Bank of Boston*, 229 F.3d 154, 158 (2d Cir. 2000); *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1237-38 (11th Cir. 2000). Accordingly, the Plan is prohibited from establishing minimum rates for accrual of benefits that cause a Plan participant's benefits to accrue very slowly until the participant is near retirement age, which is age 65 under both ERISA and the Plan. *See* Doc. 12, Ex. A ¶ 1.33. *See also* 29 U.S.C. § 1002(24); *Berger*, 338 F.3d at 758, 762; *Walker v. Monsanto Co. Pension Plan*, Nos. 04-cv-436-DRH, 06-cv-139-DRH, 06-cv-003-DRH, 05-cv-736-DRH, 2006 WL 2802051, at * 2 (S.D. Ill. Sept. 27, 2006); *Donaldson*, 435 F. Supp. 2d at 858. Plaintiffs allege that the Plan violates the so-called "133-1/3%" test of backloading because swings in the interest rate on 30-year Treasury securities are likely to cause the

"Interest Credits" allocated to a Plan participant's CBA to accrue in later years at a rate more than one-third higher than the rate of accrual of such benefits in earlier years. *See* 29 U.S.C. § 1054(b)(1)(B). *See also Register v. PNC Fin. Servs. Group, Inc.*, No. 04-CV-6097, 2005 WL 3120268, at *3 (E.D. Pa. Nov. 21, 2005) (although ERISA furnishes in addition to the 133-1/3% test of backloading in a defined benefit plan two other tests of backloading, namely, the "3% rule" set out at ERISA § 204(b)(1)(A), 29 U.S.C. § 1054(b)(1)(A), and the "fractional accrual rule" set out at ERISA § 204(b)(1)(C), 29 U.S.C. § 1054(b)(1)(C), only the 133-1/3% test is applicable to a cash balance plan because benefits under such a plan are based on career pay).

As Boeing points out, in testing the Plan for backloading Boeing is entitled to assume a constant rate of interest with respect to the accrual of "Interest Credits" in a Plan participant's CBA. For purposes of the 133-1/3% rule, ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), provides that "all . . . relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year." 29 U.S.C. § 1054(b)(1)(B)(iv). The parallel provision of the Internal Revenue Code ("IRC") concerning backloading likewise states that under the 133-1/3% rule "all . . . factors used to compute benefits shall be treated as remaining constant[.]"  26 U.S.C. §  411(b)(1)(B)(iv).[2]  Finally, regulations promulgated by the Treasury Department regarding section 411 of the IRC, which are owed, of course, the highest degree of deference by the Court, *see Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998) (citing *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S.

---

2. Because one of the purposes of ERISA is to encourage employers to establish pension plans and, correspondingly, favorable tax treatment is furnished for pension plans that comply with ERISA, many sections of ERISA have counterparts in the IRC. *See Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 813 n.7 (S.D. Ill. 2006).

837, 842-43 (1984)); *University of Chicago Hosps. v. United States*, No. 05 C 5120, 2006 WL 2631974, at *2 (N.D. Ill. Sept. 8, 2006), state that, for purposes of the 133-1/3% rule,

> for any plan year, social security benefits and all relevant factors used to compute benefits, *e.g.*, consumer price index, are treated as remaining constant as of the beginning of the current plan year for all subsequent plan years.

26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D). Boeing has demonstrated that, assuming "Interest Credits" are allocated to a Plan participant's CBA at a constant rate of 5.25% (the bottom rate under the Plan, as noted), a participant's benefit will never increase at a rate of more than a third in any given Plan year. Boeing points out further that, if a higher constant interest rate is assumed, the likelihood of the Plan violating the 133-1/3% rule is even more remote.

Plaintiffs do not dispute that, assuming a constant rate of interest, the Plan is not backloaded, but argue that the "real-world" effect of the Plan's use of a variable interest rate (the annual rate on 30-year Treasury securities) to compute "Interest Credits" creates a situation in which variations in the 30-year Treasury rate are likely to cause backloading. This argument is simply wrong. The Plan clearly is a "frontloaded" – not backloaded – cash balance plan within the meaning of applicable Treasury regulations. As noted, 26 C.F.R. § 1.411(b)-1 states plainly that factors used to compute benefits will be assumed to be constant even when a plan uses a variable outside index like the Consumer Price Index ("CPI") to compute such benefits. *See* 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D). More to the point, authoritative Treasury guidance regarding cash balance plans provides that a plan will be deemed frontloaded within the meaning of section 411 of the IRC if: plan participants accrue interest credit projected to normal retirement age in the year in which the interest credit is earned and not conditioned on future employment and; where a plan calculates interest credits using a variable outside index, including the 30-year Treasury rate, the

method for computing interest credits is disclosed to participants and the benefit derived thereunder is not subject to employer discretion.

In Internal Revenue Service Notice 96-8, the Service explained that "[i]n the case of a frontloaded interest credit plan,"

> an employee's accrued benefit as of any date before attainment of normal retirement age is based on the employee's hypothetical account balance as of normal retirement age, including future interest credits to that age. If such a plan specifies a fixed interest rate for use in determining future interest credits, the employee's hypothetical account balance as of normal retirement age (including future interest credits) can be calculated precisely before normal retirement age. However, if a frontloaded interest credit plan specifies a variable outside index for use in determining the amount of interest credits, the precise dollar amount of an employee's hypothetical account balance as of normal retirement age (including future interest credits to normal retirement age), and thus the precise dollar amount of the employee's accrued benefit as of any date before normal retirement age, cannot be calculated prior to normal retirement age.

I.R.S. Notice 96-8, 1996-1 C.B. 359. The Service explained further, "[a] frontloaded interest credit plan that specifies a variable outside index for use in determining the amount of interest credits must prescribe the method for reflecting future interest credits in the calculation of an employee's accrued benefit. In order to comply with [26 U.S.C. §] 401(a)(25), the method, including actuarial assumptions, if applicable, must preclude employer discretion." *Id*. Under Notice 96-8 a cash balance plan will be deemed frontloaded (and thus within the "safe harbor" for purposes of tax qualification) if the plan computes interest credits using certain rates. Notice 96-8 identifies a number of permissible variable rates for computing interest credits, including, inter alia, the CPI plus 3%, the discount rate on 6-month Treasury bills plus 150 basis points, and, most importantly for purposes of this case, the 30-year Treasury rate. *See id*.

"The Internal Revenue Service's Notice 96-8 . . . is an authoritative interpretation of the applicable statutes and regulations[.]" *Berger*, 338 F.3d at 762 (citing *Esden*, 229

F.3d at 168-69). As Notice 96-8 makes clear, there is nothing improper about the Plan's use of the 30-year Treasury rate to compute "Interest Credits" allocated to a Plan participant's CBA. Under the terms of the Plan, "Interest Credits" are accrued in the year they are earned and are not conditioned on future employment. Similarly, the Plan discloses that, in computing "Interest Credits," it employs a rate approved in Notice 96-8, thereby satisfying the statutory requirement that benefits under an ERISA plan be "definitely determinable." 26 U.S.C. § 401(a)(25). Even if it is the case that variations in the 30-year Treasury rate can result in "Interest Credits" causing a Plan participant's CBA to grow by more than one-third in a given Plan year – and this seems mathematically implausible – this is not actionable as backloading under Notice 96-8. The Service's position is sensible and acknowledges the peculiar nature of cash balance plans. Because, as discussed, an employee's benefits under a cash balance plan are expressed in the form of periodic hypothetical credits to a hypothetical cash balance account, it would be very easy for any cash balance plan that employs a variable outside index to compute interest credits to be accused of backloading benefits due to inevitable swings in the applicable interest rate. In fact, Plaintiffs' position appears to render it largely impossible for a cash balance plan to use a variable interest rate. As Plaintiffs recognize, ERISA does not prohibit all backloading of benefits under a plan subject to the statute, only backloading that violates the statute and its implementing regulations. *See Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 845 (S.D. Ind. 2000) ("[N]ot all backloading of benefit accruals is prohibited by 29 U.S.C. § 1054(b), which prohibits only backloading that violates the specific accrual rules set forth in that statutory provision.").

Finally, the Court notes the "gotcha!" quality of Plaintiffs' theory, which seeks to trip up the Plan on the basis of swings in the 30-year Treasury rate. The Court sees no compelling

interest in playing such games, or in forcing Boeing to alter Plan provisions that obviously are intended to benefit Plan participants. As discussed, the Plan provides a minimum 5.25% floor for computing "Interest Credits," but the variable rate enables participants to do better than 5.25% in Plan years when the applicable 30-year Treasury rate exceeds the 5.25% floor. It would be easy for the Plan to adopt a fixed rate for computing "Interest Credits," but this would not necessarily be in the interest of Plan participants. It is apparent that any variations in the interest-crediting rate under the Plan are unrelated to distinctions of age and years of service intended to favor older employees and to coerce employees to remain in service until retirement age. *See Richards v. FleetBoston Fin. Corp.*, 427 F. Supp. 2d 150, 171 (D. Conn. 2006) (quoting *Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003)) (stating that "the [ERISA §] 204(b)(1)(B) 'test [of backloading] applies to how a given plan operates at a given time and prevents it from being unfairly weighted against shorter-term employees; but it is irrelevant to across-the-board increases in benefit rates made at some future time on behalf of all current employees regardless of period of service.'"); *Campanella v. Mason Tenders' Dist. Council Pension Plan*, 299 F. Supp. 2d 274, 284 (S.D.N.Y. 2004) (an "across-the-board prospective increase in benefit rates for all employees" regardless of age and years of service does not constitute unlawful backloading under ERISA). *See also Cooper*, 457 F.3d at 642 (noting that "[l]itigation cannot compel an employer to make plans more attractive," but that "[i]t is possible . . . for litigation about pension plans to make everyone [including participants] worse off."). The Court concludes that the allegations of backloading set out in Count I of Plaintiffs' complaint fail to state a claim upon which relief can be granted.

    **C.**    **Count II (Age Discrimination)**

The Court turns to Boeing's request for dismissal of Count II of Plaintiffs' complaint,

which, as noted, alleges that the Plan is age-discriminatory in violation of ERISA. Under ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), "a defined benefit plan shall be treated as not satisfying [ERISA benefit accrual requirements] if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). As Plaintiffs acknowledge, the question of dismissal of this portion of their complaint is controlled by the recent decision of the Seventh Circuit Court of Appeals in *Cooper*. The Court concludes that *Cooper* mandates dismissal of Count II for failure to state a claim upon which relief can be granted.

In the *Cooper* case IBM employees who were participants in the company's cash balance pension plan brought suit under ERISA for alleged age discrimination. Under the plan, as here, IBM imputed value to each employee's cash balance account in the form of credits, specifically, a 5% pay credit (analogous to the "Benefit Credits" under Boeing's Plan), and annual interest credits set at 100 basis points above the rate of interest on 1-year Treasury bills. *See* 457 F.3d at 637. Every IBM employee received the same 5% pay credit and the same annual interest credit. *See id*. at 638. The district court held that the term "benefit accrual" for purposes of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), is synonymous with the term "accrued benefit" for purposes of ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A), that is, the annuity a participant in a defined benefit plan is entitled to collect upon attaining normal retirement age. *See Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1016-17 (S.D. Ill. 2003). Because the accrued benefit in a defined benefit plan must be expressed as an annuity payable at age 65, the district court reasoned that cash balance plans necessarily discriminate against employees who are closer to normal retirement age than employees who are further from retirement age because credits to a

younger employee's cash balance account, expressed as an annuity payable at age 65, are automatically more valuable than the same credits allocated to an older employee's account. A younger employee simply is entitled to more years of interest on the same employer contribution to his or her cash balance account than is an older employee. *See id.* at 1021 (quoting Edward A. Zelinsky, *The Cash Balance Controversy*, 19 Va. Tax Rev. 683, 733 (2000)) ("In terms of an age 65 annuity, the interest credits will always be more valuable for a younger employee as opposed to an older employee . . . . There is no dispute about the underlying arithmetic of cash balance arrangements: each year, as a cash balance participant ages, the same contribution made for her in the previous year declines in value in annuity terms.").[3]

In reversing the district court, the Seventh Circuit Court of Appeals examined ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), in pari materia with ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A). *See Cooper*, 457 F.3d at 638. Under ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A), "[a] defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(2)(A). While acknowledging that a cash balance plan is a defined benefit plan and not a "defined contribution plan" or "individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), the Seventh Circuit reasoned that a cash balance plan should be treated equivalently to a defined contribution plan for purposes of ERISA's age discrimination provisions,

---

3. The district court offered the following example: "[A] 49 year old employee with 20 years of service accrues an age 65 annuity of $8,093 in the year 2000. The following year, he accrues an additional $622, and by 2010, his additional annual accrual is only $282. This 49 year old employee's benefit accrual has been reduced for each year he has aged, and this reduction violates ERISA § 204(b)(1)(H)." *Cooper*, 274 F. Supp. 2d at 1021-22.

notwithstanding the fact that in a defined contribution plan, unlike a cash balance plan, contributions to participant accounts are actual, not hypothetical. *See* 457 F.3d at 638 (stating that the legal treatment of a plan for purposes of ERISA age discrimination rules should not depend on whether "the account balances are book entries rather than cash").

The Seventh Circuit Court of Appeals concluded that the district court erred in holding that the term "benefit accrual" for purposes of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), is synonymous with the term "accrued benefit" for purposes of ERISA 3(23)(A), 29 U.S.C. § 1002(23)(A). Such an approach, the Seventh Circuit held, treats the "time value of money" as age discrimination. *Cooper*, 457 F.3d at 638. Rather, the court concluded, the term "benefit accrual" refers to what an employer imputes to a plan participant's account:

> Interest is not treated as age discrimination for a defined-contribution plan, and . . . it should not be treated as discriminatory for a defined-benefit plan either. The phrase "benefit accrual" reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change), while the defined phrase "accrued benefit" refers to outputs after compounding. That's where this litigation went off the rails: a phrase dealing with inputs was misunderstood to refer to outputs. As long as we think of "benefit accrual" as referring to what the employer imputes to the account – an understanding reinforced by the use of the word "allocation" in the subsection addressing defined-contribution plans – there is no statutory difference between the treatment of economically equivalent defined-benefit and defined-contribution plans. For defined-benefit plans, where the account is an accounting entry rather than cash, "benefit accrual" matches the money "allocated" to a defined-contribution plan.

*Id*. at 638-39. The terms of the IBM plan were age-neutral, e.g., "[e]very covered employee receives the same 5% pay credit and the same interest credit per annum," so that there was no reduction in employer inputs to the plan on account of age. *Id*. at 638. Thus, the Seventh Circuit held that the plan was not age-discriminatory in violation of ERISA. *See id*. at 642-43. *See also Register v. PNC Fin. Servs. Group, Inc.*, No. 05-5445, 2007 WL 222019, at *10 (3d Cir. Jan. 30, 2007) (quoting

*Cooper*, 457 F.3d at 639) (holding with respect to the terms "benefit accrual" and "accrued benefit" as used in ERISA that there is "no indication that Congress intended that courts and administrators use these phrases interchangeably . . . . [T]he phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in . . . , while the defined phrase 'accrued benefit' refers to outputs after compounding."); *Sunder v. U.S. Bank Pension Plan*, No. 4:05CV01153 ERW, 2007 WL 541595, at *6 (E.D. Mo. Feb. 16, 2007) ("[T]he term [']rate of benefit accrual,['] as applied to cash balance plans, is best read as referring to the employer's contribution to the plan, and not the benefit the employee receives upon retirement."); *Finley v. Dun & Bradstreet Corp.*, Civil Action No. 06-1838 (SRC), 2007 WL 196753, at *3 (D.N.J. Jan. 26, 2007) ("[29 U.S.C.] § 1054(b)(1)(H) prohibits reduction in benefit accrual which . . . is the amount that the employer puts in.  It does not apply to accrued benefits that an employee takes out.  Because Plaintiff complains in Count One that age has a differential effect on what an employee takes out – but not what the employer puts in – he has failed to state a valid claim for violation of § 1054(b)(1)(H)."); *Drutis v. Quebecor World (USA), Inc.*, 459 F. Supp. 2d 580, 591 (E.D. Ky. 2006) (holding that a cash balance plan was not age-discriminatory under ERISA:  "This Court joins the majority of courts in rejecting an interpretation of 'rate of benefit accrual' for cash balance pension plans as being the same as 'accrued benefit' and, instead, adopting a definition consistent with changes in the account allocations or account balance.") (collecting cases).

In this instance there is no dispute that the Plan is age-neutral and that the rate of contributions to Plan participants' accounts does not change on the basis of age.  Thus, under *Cooper*, it is not the case that "benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i).  Although Plaintiffs

argue that the Plan is age-discriminatory because a participant's accrued benefit as a percentage of compensation decreases as the participant nears normal retirement age, the Court does not agree. As *Cooper* makes clear, the term "benefit accrual" for purposes of the statute means employer inputs to a cash balance account, not the final account balance: "'[B]enefit accrual' refers to the annual addition to the pot, not to the final payout." 457 F.3d at 641. The reduction in Plan benefits asserted by Plaintiffs obviously is not the product of a reduction of employer inputs into the accounts of Plan participants and no doubt is attributable to the time value of money, which, as *Cooper* also makes clear, is not age discrimination.[4] Under *Cooper*, Count II of Plaintiffs' complaint is due to be dismissed.

As Plaintiffs point out, several decisions from district courts in the Second Circuit have disagreed with the decision of the Seventh Circuit Court of Appeals in *Cooper*. *See, e.g., Parsons v. AT&T Pension Benefit Plan*, Civil Action No. 3:06CV552 (JCH), 2006 WL 3826694, at *1 (D. Conn. Dec. 26, 2006); *In re Citigroup Pension Plan Erisa Litig.*, No. 05 CIV. 5296SAS, 2006 WL 3613691, at **11-14 (S.D.N.Y. Dec. 12, 2006); *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479, 488-90 (S.D.N.Y. 2006). *But cf. Laurent v. PriceWaterhouseCoopers*, 448 F. Supp. 2d 537, 551-54 (S.D.N.Y. 2006); *Hirt v. Equitable Ret. Plan for Employees, Managers & Agents*, 441 F. Supp. 2d 516, 550-51 (S.D.N.Y. 2006). However, it is this Court's duty, of course, to follow the law of this Circuit as expressed in *Cooper*. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005); *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *7 (N.D.

---

4.  Indeed, Plaintiffs themselves observe that the Plan specifically makes inputs to participant accounts in order to ameliorate reductions in accrued benefits as a percentage of compensation over time. *See* Doc. 43 at 3.

Ill. Aug 2, 2006); *EEOC v. Sidley Austin Brown & Wood LLP*, 406 F. Supp. 2d 991, 996 (N.D. Ill. 2005); *Lewis v. Zion*, No. 1:04-CV-459-TS, 2005 WL 1313682, at *2 (N.D. Ind. May 26, 2005); *In re GGSI Liquidation, Inc.*, 313 B.R. 770, 778 (Bankr. N.D. Ill. 2004).  Accordingly, Count II of Plaintiffs' complaint must be dismissed.

Finally, the Court recognizes that dismissal under Rule 12(b)(6) normally is without prejudice and with leave to amend.  *See Looper Maint. Serv., Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir. 1999); *Stebbins v. Weaver*, 537 F.2d 939, 942 (7th Cir. 1976); *Crichton v. Golden Rule Ins. Co.*, Civil No. 06-264-GPM, 2006 WL 2349961, at *4 (S.D. Ill. Aug. 11, 2006).  *See also Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1207 (D.C. Cir. 1993); *O'Brien v. National Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991); *Woody v. Sterling Aluminum Prods., Inc.*, 243 F. Supp. 755, 760 (E.D. Mo. 1965).  However, in this instance it is clear that Plaintiffs' claims under ERISA are incurably defective and that granting Plaintiffs leave to amend their complaint will serve no purpose other than to prolong this litigation unnecessarily.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Szumny v. American Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001); *Maxwell*, 2007 WL 420195, at *5; *Crichton*, 2006 WL 2349961, at **2-3, *8; *Woodall v. AES Corp.*, No. IP-02-575-C-B/S, 2002 WL 1461718, at *4 (S.D. Ind. July 5, 2002); *Bartoli v. Attorney Registration & Disciplinary Comm'n*, No. 97 C 3412, 1998 WL 100246, at *8 (N.D. Ill. Feb. 24, 1998); *Roncone v. Ligurotis*, No. 92 C 4054, 1993 WL 321737, at *4 (N.D. Ill. Aug. 20, 1993).  *See also Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 772 (9th Cir. 2002) (dismissal of a complaint under Rule 12(b)(6) without leave to amend is proper if the complaint cannot be cured by amendment); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 1998 & Supp. 2007) ("[L]eave to

amend the complaint [following a Rule 12(b)(6) dismissal] should be refused . . . if it appears to a certainty that the plaintiff cannot state a claim.") (collecting cases).  Therefore, the Court will dismiss Plaintiffs' complaint with prejudice and without leave to amend.

### Conclusion

Boeing's motion for a lift of stay (Doc. 30) and motion to dismiss (Doc. 11) are **GRANTED** and this action is **DISMISSED with prejudice**. Judgment will be entered by a separate document.  Plaintiffs' motion for class certification (Doc. 38) is **DENIED as moot**.

**IT IS SO ORDERED.**

Signed this 13th day of March, 2007.

/s/       David   RHerndon
**United States District Judge**